Prouty agt. Prouty.

## ONTARIO COUNTY COURT.

Prouty, respondent, agt. Prouty, appellant.

### *Landlord and Tenant.*

Tenants *from year to year* may be removed by "summary proceedings," under the landlord and tenant acts of 1830 and 1849, notwithstanding the omission from those acts of the phrase "from year to year"—which was employed in the statute of 1820.

Such a tenant is included in the term "*Tenant at Will*" as used in the statutes of '30 and '49, and may be summarily removed upon *one month's* notice to quit *terminating with the year.*

The affidavit, on which the summons issues, should state that the tenant is holding over "*without the permission of his landlord.*" If it do not, and the objection is taken at the return of the summons and overruled, it is error, for which the proceedings will be reversed.

The reduction of the term for which *parol* leases may be made, from *three* years to *one,* had no legal effect upon estates "from year to year."

Worden & Cheesebro, *for Respondent.*

J. N. Whiting and A. T. Knox, *for Appellant.*

Mark H. Sibley, *County Judge.*—This case is before the court on appeal under the act of 1849 (*page* 291–2, *of the laws of that year*), from the judgment of Justice Folger, rendered, on verdict, against the appellant, as a tenant holding over after the expiration of his term without the permission of the respondent, his landlord.

On the return day of the summons the appellant appeared before the justice and objected to the sufficiency of the affidavit on which it was issued, on the following grounds:

1st. That it does not bring the tenant within any of the subdivisions of § 28 of the Landlord and Tenant act.

2d. That it presents the case of a tenancy "*from year to year,*" and does not show that the tenant has had six months notice to quit.

3d. That it does not show that the tenant was holding over without the permission of his landlord.

11

These objections were severally overruled by the justice.

Upon the 2d objection he held that the appellant was a tenant from year to year; that as such tenant he would have been entitled to six months notice to quit *before ejectment*; but, that no notice to quit was necessary before summary proceedings for removal under our Landlord and Tenant acts; and that the tenant was liable to be removed under the 1st subdivision of the 28th section, as a tenant holding over after the expiration of his term.

After these decisions were announced, the tenant put in a counter affidavit, and the case went to a jury upon proofs, under the charge of the court, which was in accordance with these preliminary rulings.

This tenant took possession on the 1st day of May 1835, under a *parol demise*, for an indefinite period, at an *annual rent*, payable in quarter-yearly instalments, and continued to hold, by himself, his sub-tenant and assigns, to the 1st day of May 1850, when, he being again in possession, the landlord demanded a surrender and on the following day instituted these proceedings.

The relation of the appellant under such a demise and continued occupation was clearly that of a tenant from year to year, *as defined by all writers who have treated of that particular estate.* As such tenant he was entitled, by the well settled principles of the common law, to six months notice before his estate could be terminated. For the appellant it is insisted, that such an estate is not within the terms employed in the Revised Statutes or the statute of 49: or, if within those acts, that *six months* notice to quit was necessary to terminate it; and that until the ending of such notice the tenant could not be " holding over after the expiration of his term."

The questions to be decided are,

1st. Is a tenant from year to year subject to summary removal under our Landlord and Tenant acts?

2d. If so is he entitled to any and what notice to quit before such proceedings can be instituted?

3d. What is the effect of omitting from the affidavit on which the summons is granted, the averment that the tenant is at the

time of the application holding over " *without the permission of the landlord?*"

The questions thus presented are new and of great practical importance. I am required to review them with all the care which these considerations and the rights of the parties impose. It was my wish to dispose of the case at the term at which it was argued; but time did not then allow me to give to it that thorough investigation which I desired.

By our first statute allowing summary proceedings for the removal of tenants (*Statute of* 1820, *p.* 176, § 1), such proceedings are authorized against " tenants or lessees at will, or at sufferance, or for part of a year, or for one or more years, or from year to year."

The Revised Statutes of 1830 (*2d vol. 3d ed. p.* 603, § 28) and the statute of 1849, omit the phrase "*from year to year.*" No allusion to this change is to be found in the Revisers' notes, or in any of the cases cited on the argument.

The counsel for the tenant argue that by omitting those words from the statute of 1830, the revisers and the legislature intended to exclude from the operation of the act the estate described by them.

On the other hand, it is insisted that this phrase was omitted because that which was previously an estate from year to year was converted by the Revised Statutes into a tenancy for a single year—terminating by legal implication at the end of each year. The position of the respondent's counsel on this point, fully stated, is this:

That, although prior to 1830 (when terms for *three years* might be created by parol), the appellant's estate would have been from year to year; yet that, since the Revised Statutes have made void all leases by parol for more than *one year*, such limitation necessarily abolished the estate from year to year as known to the common law; because such an estate could only be created by convention, expressed or implied, between the parties, for a term exceeding one year; that, as the continuance of the tenant beyond the stipulated term always implied a renewal of the original

contract; and the statute of 1830 not allowing parties to lease by parol for more than one year; the law will not imply an agreement which the parties can not lawfully make, but that it does imply a lawful agreement, i. e., for one year certain, and so on for each year of occupancy—limiting the term, by impli-cation, to the current year and making it expire with such year. That, as a consequence of this change in the law, the tenant, who enters under a parol demise for more than one year or for an indefinite period, must be deemed to hold over after the expiration of each year in like manner as if he had entered under a parol demise for one year only and held over after the close of that year without the consent of his landlord expressed or implied That therefore, the appellant in this case was a tenant for one year, and not entitled to any notice to quit, being within the phrase, retained in the Revised Statutes, a tenant *" for one or more years."*

It is further insisted on the part of the respondent that the abrogation, thus effected, of the common law estate from year to year, led the Revisers to omit that estate from the Landlord and Tenant act as one no longer known to our laws.

These views have been very earnestly and ably enforced by the counsel for the landlord, and authorities have been cited to sustain them. It becomes necessary to examine these positions carefully; for, if they are sound, they are conclusive against the first and second points taken by the appellant, and settle two very practical and important questions.

In the first place it may be remarked that the Revisers did not recommend the changing of the term for which parol leases may be made from three years to one. The statute of frauds as sub-mitted to the legislature retained the old term of three years. The legislature changed it to one. It would seem, therefore, not to have been the purpose of the Revisers to effect the change contend-ed for. Still it may have been wrought out whether the revisers or the legislature intended it or not. But we must not adopt without full consideration a construction which will work so important a change in our jurisprudence. This description of tenancy is

perhaps one of the most common and convenient among men, and it will continue to exist in fact, whatever changes may be made by the legislature in respect to the privileges belonging to it.

At an early period in the history of English jurisprudence—so long ago as the Year Books—the wisdom of the common law, " *in order to avoid so great injustice as would be the turning out of a tenant from year to year suddenly, or upon short notice, as a strict tenant at will might have been turned out, attached to such an estate the right to six months notice to quit, terminating with the year.*" This right has been preserved and has constituted the distinguishing characteristic of such a tenancy in England and in this state, certainly down to the enactment of our statute for summary removal of tenants. It is a rule moreover founded in justice and reason and should not be abrogated by inference or implication.

Chancellor Kent, treating " Of Estates at Will," in the 4th vol. of his Commentaries (*p.* 114), says: The resolutions of the courts, turning the old " estates at will into estates from year to year, with the right on each side of notice to quit, are founded in equity and sound policy, as they put an end to precarious estates and to the abuses of discretion."

The same learned commentator remarks (*ib. pp.* 115–16), that the Roman law, like the English, was disposed as much as possible, and upon the same principles of equity, to construe tenancy at will to a holding from year to year, and to give to the tenant the reasonable right of notice to quit; that, " when the sages at Westminster were called to examine the same doctrines, with a strong if not equally enlightened sense of justice, they were led to form similar conclusions, even though they had to contend in the earlier period of the English law, when the doctrine was first introduced, with the overbearing claims of the feudal aristocracy and the scrupulously technical rules of the common law."

Upon the case of Ellis vs. Paige reported in 2 *Pick.* (*Mass.*) *R. p.* 71, Mr. Kent, in a note at page 113 of the 4th volume of his Commentaries, uses the following language: " The opinion of Judge Putnam contains a full and broad view of the whole

ancient and modern law upon the subject, and he established, by authority and illustration, the necessity of reasonable notice to quit in all cases of uncertain tenancy, whether under the name of tenancies from year to year or at will.  He showed that the doctrine was grounded on the immutable principles of justice and the common law; and was introduced for the advancement of agriculture and the maintenance of justice, and to prevent the mischievous effects of a capricious and unreasonable determination of the estate."

It is contended by the respondent's counsel that this ancient and time honored right of notice to a tenant from year to year, is taken away by the Revised Statutes, and that the estate itself is in effect abolished, as the necessary legal consequences of changing the term for which parol leases may be created, from three years to one.

But I apprehend that it was never essential to a tenancy from year to year that the original demise should be for more than one year.  That estate is not in this case, and need not be in any case, founded upon express contract; but may grow out of the subsequent acts or omissions of the parties.  The relation arises from the circumstances in which they place themselves to each other during the occupancy.  Out of these circumstances the common law, without conventional arrangements, created this particular description of estate and attached to it the just and reasonable right of six months notice to quit before it could be terminated.  Such is the doctrine of the common law, whether the tenant entered under an agreement for an indefinite period, or for one or more years, and held over with the permission of his landlord, and, in some cases, when the original entry was without privity between the parties.

I proceed to extract, without comment, the doctrine of some leading cases in England and in this country, bearing upon these points:

*1st Term Rep.* 159.—" Notice is necessary in all cases where the duration of the tenant's term or interest is not *fixed and limited by previous agreement*, as if he hold from year to year as

long as both parties can agree; for, in that case, neither party can determine the tenancy without giving notice to the other."

*3d ib.*, 13.—" The tenancy from year to year succeeded to the old tenancy at will, which was attended with many inconveniences, and, in order to obviate them, the courts very early raised *an implied contract for a year*, but added that the tenant could not be removed at the end of the year without receiving six months notice " (*See also 2d Crabb's Law of Real Property, p.* 269, § 1570.)

*Esp. Rep.* 265.—" If there be a lease for *a year certain,* and, by consent of both parties, the tenant continue in the possession afterwards, the law implies a tacit renovation of the contract; the parties are supposed to renew the old agreement, which was for one year. *But then,* it is necessary, if either party should be inclined to change his mind, that he should give the other party half a year's notice before the expiration of the next or any following year." (*See also 1st T. R.* 85; 8 *ib.* 3; *Woodfall's L. & T.* 164; *1st Cruise on Real Property,* 84; *2d Crabb L. of R. P.* § 1306, 1518, 1566, 7, 8, and 9.

*5 Term Rep.* 47.—" Though a lease be *void by the Statute of Frauds,* as to the duration of the term, the tenant holds under the terms of the lease in other respects, and can only put an end to the tenancy at the expiration of the year."

*1st Cruise on Real Property; p.* 277, §29.—" Where an agreement for a longer term than three years is made by parol which is void as to the duration of the term, *there is a tenancy from year to year,* regulated in every other respect by the agreement."

*Morehead vs. Watkins,* 5 *B. Monroe Rep. p.* 228 decides that though by the statute of Kentucky no action can be maintained on a verbal lease for *more than one year* yet, if the lessee occupies under such lease, he *is entitled to six months notice to quit.*

The following cases decided by the courts of this state, are equally adverse to the doctrine contended for by the respondent's counsel:

In Jackson vs, Salmon (4 *Wend. R.* 327), Ch. J. SAVAGE remarked : " The only question is, whether the defendant was

entitled to notice to quit. He had hired the premises for *one year* and continued in possession after that period. He was tenant from year to year and entitled to notice.

The doctrine in Bradley vs. Covell (4 *Cow. Rep.* 349), is that a tenant entering for an unlimited period, is a tenant from year to year, and entitled to notice; that a continued possession, or other circumstances, convert a tenancy at will into " *a tenancy at will from year to year,*" and imposes the necessity of giving six months notice." (*See also* 1 *John. R.* 325; 8 *Cowen*, 230; 11 *Wend.* 619.

It has been repeatedly held by the courts of this state, *before* the statute of 1830, that a tenant *under a parol demise* who continued in possession beyond the period of *three years*, was a tenant from year to year, and entitled to notice to quit. As in Schuyler vs. Leggett (2 *Cowen*, 660). "Though a parol demise for seven years be void by the statute of frauds, yet it enures as a tenancy from year to year, if the tenant enter and hold under it, and it will regulate the terms of the tenancy in all other respects."

*Prindle vs. Anderson* (19 *Wend. R.* 391, reviewed by the Court for the Correction of Errors, 23*d ib.* 616), was a case of a *parol* demise made *subsequent to the statute of* 1830, and yet the court held that *the circumstances* should work a yearly or monthly tenancy and that such a tenant was entitled to notice to quit.

This estate from year to year, is distinctly recognized as belonging to a tenant who enters under a *parol demise for more than one year* in the late case of Wibber vs. Sherman (3 *Hill R.* 25), and still later, in Conway vs. Starkweather (1 *Denio.* 114), Ch. J. BRONSON says: " When a tenant under a demise *for a year or more* holds over after the end of his term without any new agreement of his landlord, he may be treated as a tenant from year to year, and in all other respects as holding according to the terms of the original lease. He will be a tenant if the landlord either receives or distrains for rent after the end of the *original term*; and when he neither says or does any thing, his acquiescence may perhaps be inferred from the mere lapse of time."

I am not able to perceive any connexion between the changes

in the statute of frauds and the landlord and tenant act; and am constrained, by the force of the authorities referred to and upon principle to dissent from the positions of the counsel for the landlord in the case before me, and to hold that the court below (while correctly deciding that this tenant had an estate from year to year in the premises), erred in ruling that he was not entitled to *any* notice to quit.

I find myself equally unable to adopt the views presented, and urged with great force, by the counsel for the appellant, viz: 1st. That the omission of the phrase "from year to year," from the Revised Statutes and the statute of 1849, left the justice without jurisdiction in this case; or, 2d. That if such a tenant may now be removed by these summary proceedings, he must first have *six months* notice to quit.

It is not without some hesitation that I put the law of this case upon grounds not taken by the learned counsel on either side, and not even suggested by counsel or court in any of the cases which have arisen in this state under the landlord and tenant act since the revision of 1830. But, have reached the conclusion after much investigation and reflection, that it was not the intention of the legislature to leave tenancies from year to year out of the operation of that act, and that this description of estate is comprehended by the term " TENANT AT WILL," as used in the Revised Statutes and in the statute of '49.

An estate "from year to year," or what came to be so called, was originally an estate at will, strictly. But the courts, by a species of judicial legislation, founded on principles of equity and public policy, attached to such an estate the right to half a year's notice of the *will* of the landlord, or lessee, to terminate it. Still it remained an estate at will, qualified only by the new rule of notice which controlled the exercise of such will, in respect to the time when it might take effect, and the mode in which it should be manifested. Accordingly the ablest commentators and compilers, in England and in this country, treat of this description of tenancy under the head *"Of Estates at Will,"* (*Cruise on Real Property, p.* 270; *Kent Com.* 4 *vol. p.* 110.)

12

In Parker vs. Constable (3 *Wilson's Rep.* 25), Ch. J. WILMOT remarked: " It has not been doubted of late years that half a year's notice to quit must be given to a tenant at will." The facts of this case are not given by the Reporter, yet it was doubtless that of a tenancy from year to year; for Mr. Crabb in his "Law of Real Property," (2 *v.*, *p.* 268, § 1568), cites the same case in these words: " It has not been doubted of late years that half a year's notice to quit must be given to a tenant at *will* (that is an implied tenant from year to year), before the end of which an ejectment will not lie to turn him out of the farm."

At § 1565 the same author says that, "*prima facie*," all leases for uncertain terms create a tenancy at will."

*Woodfall's L. & T. p.* 165, (treating of tenancies from year to year) uses this language: " Half a year's notice to quit must be given to a tenant at will (that is a yearly tenant), or his executor, or an ejectment will not lie."

The Case in 2 Pick. (Mass.) R. p. 70, before cited, was a letting from month to month; yet it was held to be a tenancy at will.

In Bradley vs. Covel (8 *Cowen R.* 349), WOODWORTH, J., " a tenancy at will is held to be a tenancy from year to year, merely for the sake of a notice to quit;" and the courts of this country have in repeated instances used the phrase " tenant at will" and "tenant from year to year" indiscriminately. By a statute of this state (§ 1 *of title* 2; *art.* 1 *ch.* 1 *of pt.* 2 *of the R. S. 2d vol. 3d. ed. p.* 9), " Estates in lands are divided into estates of inheritance, estates for life, estates for years and estates at will and by sufferance."

Unless, therefore, the estate from year to year is embraced in one of these divisions it can not be any longer known to our laws. I do not perceive any legal foundation for ranging it under any other of the statutory divisions than that of an "Estate at will." Indeed a tenant from year to year is one holding such a relation to the owner of the premises that he has a legal right to occupy them from year to year *as long as they please*, but he must quit, at the end of any year, when the landlord manifests his *will* to that effect by the legal notice.

Prouty agt. Prouty.

At *common law* this notice was for half a year, terminating with the year. This the wisdom of its judges deemed but a reasonable notice to a lessee from year to year of a farm or a tenement, that he must turn out. But this common law right, was of course, subject to legislative control, which could abridge or take it away at pleasure. This power over the subject has been exerted by the legislature of this state in the enactment of § 7 of title 4th, ch. 1, p. 2 of the R. S. (2d vol. 3d ed. p. 30), in these words; " Wherever there is a tenancy at will, or by sufferance, created by a tenant's holding over his term, or otherwise, the same may be terminated by the landlord's giving one month's notice in writing to the tenant requiring him to remove therefrom."

The *wisdom* of the legislature has thus reduced the term of the old common law notice from half a year to one month.

The commissioners of the revision of 1830, with a view to the making notices to all descriptions of tenants at will or sufferance— " whether created by the tenant's holding over his term or otherwise"—uniform; and to get rid of the six months additional notice required by the decision in the case of Bradley vs. Covel (4 Cowen, 149), and deeming *three months* notice sufficient in all cases, submitted this section 7, with that term, to the legislature; but that body struck out "*three months*" and substituted "*one month*" (see the Revisers' Notes to §§ 7, 8, 9 and 10, 3d vol. 2d ed. p. 599). In this connection §1, above cited (p. 9, 2v. R. S.), may be considered as bearing upon my position.

I conclude, therefore, that the phrase " from year to year," was ommitted from the statute of 1830, because that particular description of estate was understood to be embraced by the term " tenant at will," and that estates described by that phrase may be terminated by a notice of not less than one month."

This section 7, and the 9th section of the same title, were undoubtedly adopted without due consideration; for supposing that they were intended to apply to tenancies from year to year, and giving to them a literal interpretation, they would enable a landlord to turn out the yearly tenant of his farm at *any time* during the year—even in seed or harvest time.

I think that these sections may receive a construction more in accordance with the principles of reason and justice; and that it is not too liberal to suppose that, whilst it was the intention to abridge the term of the old notice, it was not the purpose to interfere with the well settled rules of the common law in respect to the time when such notice should *expire;* but to leave those rules still in force, so that the one month's notice required by the 7th section must, when given to *a tenant at will from year to year,* terminate with the year of the tenant's holding, if to a tenant from month to month, with the month, &c.; and that such tenant will not be holding over *"after the expiration of his term"* within the meaning of the landlord and tenant acts, until the expiration of such notice. To give to those sections the stringent construction which their language will allow, as being within legislative intention, would be to suppose a design to bring the tenantry of this state within the rigors of that feudal system from which, as we have seen, the old judges rescued the tenantry of England. Even with the more benign interpretation which I am disposed to give to these sections, they retain quite enough of the odor of feudality; for to turn out a husbandman who is cultivating a farm from year to year, upon only one month's notice, expiring with the year, is certainly sufficiently *" summary"* and may work great wrong and injury to the tenant. To turn him out without any notice whatever, as it is insisted by the respondent's counsel (on the authority of the cases in 8*th Cow. and* 11*th Wend.*), may now be done, would be to restore in all its sternness, the old rule, against which the sages of the English common law successfully struggled.

The affidavit upon which the proceedings in the case before me are based, states that more than two month's notice to quit on the 1st May 1850, was served on the appellant.

To the sufficiency of this affidavit he took on the return of the summons, and before putting in his counter affidavit the objections stated at the head of this opinion. Upon those objections the justice decided that *no notice whatever* was necessary. In view of this decision the counter affidavit was interposed, and it

Prouty agt. Prouty.

does not deny, or take any notice of, this allegation in the land-lord's affidavit. No proof was given on that point by either party, and it was wholly lost sight of in the subsequent proceedings (probably because the decision of the justice rendered it immaterial) and no allusion was made to this fact of notice by the counsel for either party on the argument before me.

If I could, under these circumstances, give to the respondent the benefit of this notice, without violating the principle of two analagous cases, I should be disposed to do it.

But there would remain an insurmountable difficulty in the way of sustaining the judgment of the court below. The affidavit on which the summons was issued, does not state that the tenant was holding over " *without the permission of his landlord.*"

The objection was distinctly taken by the appellant at the re-turn of the summons; and the defect, in my judgment, is a fatal one.

The first subdivision of § 28 of the statute (2 *R. S. 3d ed. p.* 603), authorizes " summary proceedings" against a tenant, "where he shall hold over and continue in possession, of the de-mised premises, or any part thereof, after the expiration of his term, *without the permission of the landlord.*" The 29th section (*ib p.* 604), enables "any landlord," &c., " to make oath in writing of the *facts,* which *according to the preceding section,* authorize the removal of a tenant," &c. The next section directs that " on receiving *such* affidavit" the officer may issue his sum-mons, &c. It is not merely the holding over after the expiration of his term which subjects a tenant to the summary remedies of the statute: another condition is superadded, viz, that such hold-ing over shall be without the permission of the landlord.

This latter is one of those facts required to be set forth in the affidavit presented to the officer to bring the tenant into the con-dition which makes him a subject of summary proceedings, and to authorize the issuing of a summons.

These statutes, authorizing summary removal, being in dero-gation of the common law rights of tenants, are to be strictly construed; and the proceedings under them must conform in all respects to the requirements of the statutes.

The summary *remedy* which they provide can be made effectual only in the *manner* prescribed.   Courts will be liberal in the application of the intended remedy, but " when scanning the *proceedings* to attain that remedy they have been strict and rigid in exacting compliance with the requisitions of the statute."   EDMONDS, J., (Smith vs. Moffat, 1 *Barb. S. C. Rep.* 67).

By COWEN, J., Farrington vs. Morgan (20 *Wend. Rep.* 207), " Summary proceedings are in general open to objection for technical omissions, imperfections or defects in the return, and proceedings under the landlord and tenant act, are not exceptions. They are not like proceedings in a justices's court, expressly required, *by statute,* to be liberally construed so far as form is concerned; but the magistrate must show a strict compliance with the statute at every step."

By BRONSON, J., Hill vs. Stockings (6 *Hill's Rep.* 317), "when one wishes to put another out of the possession of a dwelling or store upon an affidavit," &c., " it is not too much to require that he shall make out a plain case in the preliminary affidavit, especially as he is allowed to be his own witness.   These summary proceedings must be carefully watched or they will be turned into the means of working injustice and oppression." (*See also* 9 *Wend. Rep.* 227; 1 *Hill,* 512; 8 *Cow.* 13).

In these and other reported cases, defects far less essential than that now under consideration have been held fatal; indeed some have been so considered which seem to be merely technical.   But this does not partake of that character.   The omission complained of is that of an essential and substantial fact, peculiarly within the knowledge of the landlord, and the statute intends to search his conscience in regard to it.   It is as much of the substance of the statute as that other fact of "holding over after the expiration of his term," to which it is cumulative; and one portion of the requirement may as well be omitted as the other.   It is not a fact to be presumed, or inferred, from the circumstances of the case, or from a short time elapsing between the demand and the making of the affidavit; for a moment of time would be sufficient to grant the permission; but the fact must be affirmatively and distinctly

Prouty agt. Prouty.

stated in the affidavit or it will not bring the tenant within the acts. This fact was distinctly stated in every affidavit which is given in the reported cases; and I have been able to find but one case which is not in entire harmony with the principles I have stated, viz: that of Simpson vs. Rhinelander (20 *Wend.* 103). The affidavit in that case was made by an *attorney* of the landlord and contained in express terms the averment of the holding over by the tenant " *without the permission of his landlord.*"

The tenant objected that this affidavit could not be legally made by an attorney. Justice Cowen held that it was well made and within the very language of the statute. It is true that, after thus deciding the point and disposing of the whole question, the judge let fall some suggestions to the effect that it is enough if the affidavit shows probable want of permission; and that if there was permission the proof of the fact is properly matter of defence to be set up by the tenant's affidavit and by proof to the jury; as he attempted to do in that case.

These suggestions were *obiter* merely, and can not be treated as authority on the point, opposed, as I think, they clearly are, to the plain import of the statute and the principles which have been uniformly applied in construing this statute and all other statutes providing special remedies in abridgment of common law rights. The affidavit must present a " plain case," within the terms of the statute before its power can be invoked. A probable or presumptive case is not enough. No one would contend for its sufficiency in respect to the holding over *after the expiration of the term.* And there is no ground of principle or authority for applying different rules to two essential requirements of the act. Nor is there any thing unreasonable or technical in requiring the landlord to state on oath whether the permission, which it might be difficult or impossible for the tenant to prove has been given.

I have never doubted that the plain terms of the act required that the want of permission should be distinctly averred in the preliminary affidavit, and I have in several instances refused to issue summons upon affidavits presented to me without such averment, until amended so as to embrace it.

I am obliged, therefore, to *reverse* the judgment and proceedings in this case.

In deciding upon points so new, and of such every day application, without the aid of any direct adjudication upon those portions of this important statute which I am required to interpret, I can not but regret that my conclusions may not be reviewed in this case by my superiors. But, the legislature having seen fit to make my decision final between these parties, I have deemed it due to the bar of the county to state, very fully, the principles and reasons for my conclusions, that it may be the better seen, by the profession, whether they are sound or not.